UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY BARRETT                         CIVIL ACTION NO. 10-cv-1890

VERSUS                                  JUDGE HICKS

LOUISIANA STATE PENITENTIARY            MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Anthony Ray Barrett ("Petitioner") of simple burglary. He was adjudicated a fourth-felony offender and received an enhanced sentence of 40 years at hard labor. His conviction was affirmed on direct appeal, State v. Barrett, 963 So.2d 1072 (La. App. 2d Cir. 2007), writ denied, 976 So.2d 174 (La. 2008), and withstood a challenge by post-conviction application. Petitioner now seeks federal habeas relief based on several challenges to his conviction and sentence. For the reasons that follow, it is recommended the petition be denied.

**Sufficiency of the Evidence**

Shreveport police officers responded to a silent alarm at Southern Automotive, which was locked and closed for business. Officer Rivet was one of the first to arrive, coming from only a couple of blocks away, and he went to the rear of the building "where it is always getting broke into." He could hear inside the business a sound like someone using a sledge hammer to hit a sheet metal wall. The manager of the business arrived and unlocked the door

so the officers could begin their investigation.

K-9 Officer Morrison gave three loud warnings to anyone inside that a police dog was entering the building, and time was allowed for someone to voluntarily come out. The officer also had the dog bark. There was no response. The officers and dog entered but did not find anyone in the main part of the building. The dog did alert to human odor coming from above the office area.

There was an attic space above the office, and two of the officers climbed up to see if anyone might be hiding there. The space tapered from about four feet high down to about two feet, and the officers could not search the entire area. Officer Morrison shouted three warnings into the space. When he received no response, he had the dog enter the space, and it alerted on top of a piece of plyboard in a back corner. The dog scratched the wood to indicate there was someone beneath it, and the officer gave an order for anyone beneath it to come out. There was no response. Morrison then turned over the board and saw Petitioner "perfectly in between the rafters with the plywood over him."

Officer Morrison ordered Petitioner to show his hands. Petitioner did not, so the officer commanded the K-9 to bite the suspect. The dog bit Petitioner on the right arm, and Petitioner began fighting the dog by kicking and punching it. The dog repositioned and bit Petitioner on the rib area. The officer eventually pulled the dog back a little, and Petitioner started following the officer's commands. After receiving <u>Miranda</u> warnings, Petitioner admitted that he heard the officer's warnings before the K-9 entered the building.

Sammy Goldman, the manager of the business, testified that he responded to the alarm

on a weekend morning when the business was closed. Police officers showed him a hole in the back of the building where someone had pulled metal back as if to gain entrance to the shop. Goldman testified that the holes were new, and Petitioner did not have authority or permission to enter the business. He also testified that hundreds of thousands of dollars worth of equipment, including numerous hand tools, were located in the shop. He did not identify any such tools or property as being stolen, but he did testify that it was later discovered that some tires had been removed from the building to a nearby field. He said the tires would fit through the holes in the building, which were likely made with a pry bar found in the area.

A six-person jury found Petitioner guilty of simple burglary, which includes the unauthorized entry of any structure with the intent to commit a felony or any theft therein. La. R.S. 14:62. Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused. State v. Austin, 113 So.3d 306, 312 (La. App. 5th Cir. 2013). Petitioner challenges the sufficiency of the evidence of his specific intent to commit a theft or felony. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).

Petitioner presented this issue on direct appeal in the state courts. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court

only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). A state-court decision rejecting a sufficiency challenge is, therefore, reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

      The state appellate court recited the appropriate Jackson standard and reviewed the trial evidence in detail. The court noted that Petitioner did not voluntarily surrender despite verbal warnings on two occasions, and Petitioner refused to surrender even when discovered by the officers. There was no evidence of a legitimate reason for Petitioner to be hiding inside the building, but there was evidence to suggest he pried his way into the building in two areas and removed two tires from the building. When this evidence is viewed in the light most favorable to the prosecution, a rational juror could have found that Petitioner entered the building with the specific intent to commit a theft. Perhaps other conclusions could be drawn, but "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). The state court appellate decision was a reasoned and reasonable application of Jackson to the facts. It is not subject to being overturned on habeas review.

**Ineffective Assistance of Counsel**

    A.  **Introduction**

Petitioner argues that his trial counsel was ineffective because she elicited harmful testimony from Mr. Goldman, conceded to elements of the crime, and did not object to an allegedly erroneous jury instruction. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

    B.  **Habeas Standard of Review**

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. Cross-Examination of Mr. Goldman

Mr. Goldman testified for the State. On direct examination by the prosecutor, he described valuable items such as tools and computers that were in the building, but he did not say that any item had been taken from or was missing from the building. On cross-examination, defense counsel first established that there was no money stored on the premises that day. She then asked if there was "anything taken from the store to your knowledge?" Goldman first said no, but then recalled how he later discovered that two tires had apparently been removed from the building and left in a nearby field. Tr. 152-53. Counsel then had Goldman talk about the different items of value that were in the building but had not been disturbed. Tr. 154.

Petitioner argues that there was nothing in the police reports that mentioned missing tires or other items, and Goldman never stated on direct that items were taken. Petitioner argues that it was, therefore, a prejudicial mistake for counsel to elicit testimony that tires were taken (which helped prove the intent to commit a theft element). Defense counsel filed an affidavit in the state court proceedings. She agreed that there was nothing in the police report to indicate anything was taken or missing from the store, and explains that the purpose of her question was to show that Petitioner did not have intent to commit a theft, in hope of receiving a conviction for a lesser responsive verdict. The answer about the tires apparently came as a surprise to counsel and everyone else in the courtroom.

The state trial court, when reviewing this claim on post-conviction application, noted that Goldman had not previously reported the alleged theft of tires to the police or prosecutor, so it stood to reason that defense counsel also had no knowledge of the theft and was simply attempting to highlight that no items had been reported as taken. It was, therefore, likely a surprise when the testimony about the tires was given. Tr. 531. The state appellate court summarily found that the record supported the trial court's finding that counsel did not commit any unprofessional errors or that any errors were prejudicial under the Strickland standard. Tr. 598. The Supreme Court of Louisiana denied review without comment. Tr. 655.

The state court's decision is not an objectively unreasonable application of Strickland. Counsel, as demonstrated by her closing argument, built her case on the lack of evidence that any items were stolen from the building. There is no evidence that she had any idea Mr. Goldman would testify that tires were taken, and she almost certainly would not have asked the question had she known he would give such a surprise answer that was contrary to information she obtained in discovery and her principal defense of the charge. It was reasonable for counsel to attempt to highlight the absence of stolen items. That she was surprised by an unanticipated answer harmful to the defense does not render her performance below an objective standard of reasonableness of counsel. More important, the state court's adjudication of this issue was not an objectively unreasonable application of that standard.

### D. Concessions

Defense counsel started her closing argument as follows:

> Ladies and gentlemen of the jury, we concede that Mr. Barrett was found in Southern Automotive Services. We concede there was an unauthorized entry into a structure. We cannot refute that fact. However, this third element of this offense, with the intent to commit a felony or theft therein. That is where the State failed to carry its burden of proof beyond a reasonable doubt.

Counsel then went on to highlight the lack of direct evidence that Petitioner created the holes in the building and the absence of direct evidence of who took the tires from the building that Mr. Goldman recalled, in hindsight, were moved. Tr. 210-12.

Petitioner faults counsel for making "unwarranted concessions" of his guilt to lesser included offenses such as unauthorized entry into a structure and to the first two elements of simple burglary. The state trial judge, when this issue was raised in a post-conviction application, observed that counsel was faced with the "formidable task" of defending a man who is neither a customer nor employee of a business but was found hiding in it, leaving counsel with "no alternative" but to admit to the obvious offense of unauthorized entry into a structure and argue the lack of intent to commit a theft therein. The court found that counsel did not perform unreasonably but adopted a strategy that afforded the best opportunity for a favorable outcome. The court also found that Petitioner did not show that, without the concession strategy, there was a reasonable probability he would have been acquitted of simple burglary. Tr. 532.

There is no evidence or even affirmative representation by Petitioner that he did not consent to this strategy. Petitioner states only that the concessions were "unwarranted" and states that he had no desire to concede guilt as evidenced by his plea of not guilty at arraignment. Petitioner has not, therefore, shown that counsel's strategy was against his

instruction or otherwise not a competent one.

Assuming Petitioner could show a lack of competence, he must also show prejudice. Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Strickland, 104 S.Ct. at 2068. The state court found that prejudice had not been shown. Petitioner has not articulated any alternative strategy that did not involve the concessions that would have stood a better chance of success. There was undisputed evidence that Petitioner was found, well hidden, in the business without any legitimate reason for being there. Conceding those facts lost nothing for the defense but possibly gained some credibility that might have assisted in persuading the jury of lack of guilt based on the third element. The strategy was not successful, but it was not prejudicial. See Haynes v. Cain, 298 F.3d 375 (5th Cir. 2002) en banc (counsel conceded guilt of second degree murder in a capital case; habeas relief denied because strong evidence of guilt prevented a finding of prejudice); Durden v. Warden, 2009 WL 465820 (W.D. La. 2009) (denying habeas relief where counsel conceded in opening statement the facts admitted by petitioner in his statement to police).

### E. Jury Instructions

The trial court instructed the jury on the elements of simple burglary as well as the statutory definitions of specific and general criminal intent. Petitioner argues that counsel was ineffective because she did not object that the court use the term "defendant" when the intent statute uses the term "offender." For example, specific criminal intent is the state of

mind which exists when the circumstances indicate that the *offender* actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Petitioner raises no other objection to the jury charges found at Tr. 30.

The state trial court rejected Petitioner's arguments that this somehow affected his presumption of innocence or prejudiced the defense. Tr. 533. Petitioner, in his federal petition, has not offered any reasonable explanation how the change in one word had any effect on the validity of the jury charges that should have drawn an objection from counsel. The state court's rejection of this frivolous claim could never be deemed an objectively unreasonable application of Strickland.

**Multiple Offender Adjudication**

The trial judge noted at the multiple offender hearing that Petitioner had an extensive criminal record and was on parole at the time of this offense. Petitioner's convictions included armed robbery, simple kidnaping, simple escape, simple burglary in connection with numerous burglaries, plus other property crimes and misdemeanors. He was 42-years-old, had a ninth-grade education, and had never held long-term employment. Petitioner was adjudicated a fourth-felony offender and faced a sentence between 20 years and life imprisonment. The judge imposed a 40-year sentence. Tr. 269-72. Petitioner argues that (1) the trial court should have quashed the multiple offender bill because the plea transcript for one of the predicate offenses is missing, (2) trial counsel was ineffective for not allowing him to testify at the hearing, and (3) the sentence is excessive.

Defense counsel filed a motion to quash the bill because the defense was not provided with the full transcript of the guilty plea hearing to a predicate conviction of simple burglary. The prosecutor recited the steps the State had gone through in an effort to obtain the transcript, made by a court reporter no longer with the court, and concluded that the transcript could not be produced. Tr. 228-29. The State's burden at the time was set forth in State v. Shelton, 621 So.2d 769 (La. 1993). It put the burden on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State met that burden, the defendant then had the burden to produce affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea. If he met that burden, the burden of proving the constitutionality of the plea shifted to the State. The State could meet its burden with a "perfect transcript" of the guilty plea that reflects a proper Boykin colloquy. If the State introduced anything less, such as a guilty plea form or minute entry indicating Boykinization was conducted, the judge had to weigh the evidence to determine whether the State met its burden of proving the prior guilty plea was informed and voluntary and in compliance with Boykin.

The State noted that certified minutes of the guilty plea showed that Petitioner was represented by counsel and was Boykinized per Boykin v. Alabama. Defense counsel responded that, without a transcript, she had no way of knowing for sure whether Petitioner properly waived his rights. The judge found that the State had met its Shelton burden through the certified copy of court minutes. Tr. 263-66.

Petitioner argued on direct appeal that the only way he could meet his burden was with access to a transcript, which the State could not provide. The appellate court reasoned that Shelton allowed other forms of attack on the prior conviction, such as testifying regarding the guilty plea or presentation of other affirmative evidence of a defect in the proceeding. State v. Barrett, 963 So.2d at 1077-78.

Petitioner repeats his appellate arguments in this court. They largely concern whether the State court properly applied the holding of Shelton, but federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). To the extent Petitioner presents a federal constitutional argument in connection with this issue, his argument is foreclosed by Lackawanna County District Attorney v. Coss, 121 S.Ct. 1567 (2001). That decision holds that habeas relief is unavailable to a state prisoner when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the prisoner is no longer in custody. There is an exception if counsel was not appointed in connection with a prior conviction, but the records in this case show that Petitioner was afforded counsel when he pleaded guilty to the prior felony. See bills of information and court minutes at Tr. 44-55 and testimony at the hearing at Tr. 241-48. No habeas relief is available on this claim.

Petitioner next claims that he ask his attorney to let him take the stand and testify about what happened at his prior guilty plea hearing so that he could rebut the State's case. Counsel, he said, would not call him as a witness. When Petitioner presented this issue on post-conviction application, defense counsel filed an affidavit in which she testified: "At no

time did Mr. Barrett ever request to testify at his habitual offender hearing." Tr. 536. The hearing transcript contains no indication of such a request. Furthermore, Petitioner has not explained what he would have testified to that would have undermined the validity of his prior plea.

The state court denied this claim, citing trial counsel's affidavit and Petitioner's failure to allege any specific defects in the Boykin examination to which he would have testified. Tr. 533-34. Despite an additional opportunity in his federal petition, Petitioner has yet to specify any such defects. Based on the record, the state court's rejection of this claim was not an objectively unreasonable application of Strickland.

Petitioner's final argument is that his 40-year sentence, which he admits is within statutory limits, is excessive in violation of Art. I, Section 20 of the Louisiana Constitution. As noted above, federal habeas courts are not concerned with mere misapplications of state law. To the extent the claim could be considered a federal constitution one, the claim lacks habeas merit.

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of a clearly established gross disproportionality principle set forth in Supreme

Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

Petitioner's lengthy criminal history was discussed above. The trial court had the benefit of a full pre-sentence investigation report and noted that both counsel had been to her office several times to discuss the case. She discussed the facts of the current conviction, the criminal history, Petitioner's background, and that she would not penalize him for challenging the multiple offender bill. She then settled on a sentence of 40 years. Tr. 266-70. Given these facts, the sentence is quite reasonable and does not present a basis for federal habeas relief, especially given the result in Lockyer.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of January, 2014.

Mark L. Hornsby
U.S. Magistrate Judge